GEORGE H. ROBERTS v. M. SCHULTZ & WIFE.

1. CONFEDERATE MONEY—GUARDIAN AND WARD.—A guardian, by order of the Probate Court, sold land of his ward on a credit. In part payment of the debt he received Confederate money, in 1864, and invested a part of it in the purchase of negroes for said ward. The action of the guardian was reported to and approved by the Probate Court. In a suit after the discharge of said guardian for the amount of Confederate money received: *Held*, That the order of the Probate Court approving the acts of the guardian in receiving Confederate money and investing it in slaves was not a nullity, nor did such approval exceed the jurisdiction of the Probate Court.

2. DISCHARGE OF GUARDIAN.—An order discharging a guardian made after the majority of the ward and upon an approval of his settlement account indorsed thereon by the ward, without citation or other notice, is valid; all parties interested being before the court, citation is not necessary.

3. See facts evidencing a settlement binding as to the ward.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The facts are stated in the opinion.

*Crosby & Hill*, for appellant.

*W. P. & E. P. Hamblen*, for appellees, cited Paschal's Dig., art. 1297; Miller *v.* Miller, 10 Tex., 332; Withers *v.* Patterson, 27 Tex., 491; Trammel *v.* Philleo, 33 Tex., 395; 1 Story's Eq., 317, 320; 2 Kent, 229; Perry on Trusts, sec. 200.

*John T. Harcourt*, also for appellees, cited Schouler's Domestic Relations, 507, 512; Hatch *v.* Hatch, 9 Ves., 296; Hawkins's Appeal, 32 Penn. Stat., 263.

MOORE, ASSOCIATE JUSTICE.—At the February Term, 1860, of the County Court of Harris county, John S. Allen was appointed guardian of the person and estate of appellee, Alexine Shultz, (then Alexine Smith,) a minor about some sixteen years of age, and gave bond as such guardian, with appellant George H. Roberts and William Mitchell as his sureties. In August of the same year, on Allen's petition, representing that it was necessary for the maintenance and education of his ward, the County Court ordered the sale of twelve hundred and eighty acres of land belonging to her estate. In November following, the guardian reported the sale of said land to John G. Chatham, on credit of twelve months, for three thousand two hundred and ninety-eight $\frac{14}{100}$ dollars, for which he had taken a note, with personal security and a lien on the land. In his annual account, filed March 27, 1863, the guardian reported the collection of $3,050 on this note, (which it is shown in the record was made in Confederate money,) and credited himself by $2,800, paid for two negroes purchased for his ward. And thereupon the court made its decree that "said guardian having accompanied his account with receipts and a bill of sale for said two negroes, with an oath that the same was just and true, it is therefore ordered, adjudged, and decreed that said account be approved."

In May, 1864, the ward became of age, and in December following she called upon the guardian for a settlement and surrender of her property; and he, on the 29th of said month, filed in the Probate Court his final account, upon which the following indorsement was written by the chief justice, and signed by the ward, to wit: "I have examined the within account and find the same to be correct; and having arrived at the age of twenty-one years, do hereby agree that my guardian, John S. Allen, be discharged from all further liability, both he and his sureties, from their guardian bond. Given under my hand the 29th December, 1864. Alexine Smith."

On the same day, without notice or citation being given

or issued to any one, the court approved said account, and discharged the guardian and his sureties, and ordered their release from all further liability.  Allen thereupon surrendered to his said ward, Chatham's note for the land, showing a balance to be still due, together with all the property then in his hands.  The negroes were at the time hired ·out, but appellee collected the amount due for their hire, and continued to do so until they were emancipated.  In 1866 she collected of Chatham the balance due on his note, and surrendered it to him.  Having married in the spring of 1872, she and her husband, on the 5th of June, 1872, commenced this suit against appellant as a surety on said Allen's bond as guardian, (Allen having removed from the State and the other surety being dead,) for the recovery of $2,800, alleged to have been received by said guardian for said land sold to Chatham and not accounted for.

A statement of the case and an inspection of the record plainly shows that it was inspired by and tried in the District Court upon, as we have heretofore decided, an erroneous conception of the law by our late predecessors in this court in regard to all transactions in which Confederate money in any way entered, and especially when such transaction was had with any one acting in a fiduciary character.  This error permeates the entire record, and no doubt controlled the decision of the case in the District Court.  With the numerous decisions of this court on the subject before it, holding that all payments made to administrators and guardians in Confederate money were absolutely void, and that the orders and judgments of the Probate Court in any way sanctioning and approving them were nullities, it was only reasonable and proper that a like rule should have been applied by the District Court in this case.  We have felt it to be our duty, however, to take the law on this subject as laid down by the Supreme Court of the United States rather than as decided by our own court.  The grounds upon which transactions involving Confederate money have been held void being that

they were in violation of the public policy and law of the Government of the United States, it cannot be doubted, we think, that greater weight should be given to the decisions of its courts than to those of State tribunals. (Mathews *v.* Rucker, 41 Tex., 636; Short *v.* Abernathy, 42 Tex., 94.)

Evidently this is not a suit to correct and revise the settlement of a guardian's account. If it was, clearly it was barred by limitation. (Paschal's Dig., art. 3922.) It is, however, an attempt to do, in effect, the same thing, by suit on the guardian's bond, for an alleged breach of its condition to "well and truly perform all the duties required of him by law." Unquestionably it is a duty required of the guardian to account for all money coming to his hands belonging to his ward; but it is also equally evident that it is the duty of a statutory guardian to thus account in the Probate Court. That court has primary jurisdiction of the ward and his estate. In it the guardian files an inventory of the estate, returns annual reports, and makes, or should make, the final settlement of his trust. And unless it appears that the County Court of Harris county exceeded its jurisdiction, or its judgment was a nullity, approving the collection of Confederate money by Allen from Chatham, and the purchase of the negroes with the money for which his surety is now sued, and releasing and discharging him on final settlement, certainly this suit cannot be maintained. In addition to the fact that the amount for which the suit is brought was collected in Confederate money, it is said the court had no jurisdiction to direct or approve the investing of the ward's money in negroes. But we are cited to no authority showing that an order of the court to this effect can be regarded as a nullity, except the decisions of this, and it may be other State courts, referring in some way to Confederate money. The statute declares it to be the duty of every guardian of the estate of a minor to take care of and manage such estate in such a manner as a prudent man would manage his own estate. And the court should hold the guardian accountable, if he has

failed to so manage it. But surely it cannot be said the court had not the authority to determine whether the acts of the guardian in the matters referred to were not such as a prudent man might have done in the management of his own business; or, in other words, it must be held as a conclusion of law that to collect a debt in Texas in 1862 in Confederate money, and to invest such money, after it had been collected, in negroes, was so manifestly wanting in prudence, that the judgment of the court affirming and approving thereof was absolutely void. Certainly such a proposition is too manifestly wrong to require discussion.

But it is also said that the order of the court discharging the guardian was *coram non judice,* because no notice was given of the filing of his account for final settlement. It might be answered that it does not appear that the order approving the purchase of the negroes was improperly made or without notice. But aside from this, we cannot agree that the order for final discharge of the guardian can be held to be void on this account. To support this proposition we are cited to the statute, which directs citation to all persons interested in the estate, when executors and administrators apply to the court to resign or be discharged. (Paschal's Dig., art. 1293.) But no provision of this kind seems to be directly required by the statute on the final settlement between guardian and ward. The guardian and ward are the only parties interested in such settlement. And as the ward is no longer a minor, no "friend or protector" is required to be cited to see that he is not overreached and imposed upon by the guardian. If the proper parties are before court, the proceedings are certainly not void for want of notice. (Prince *v.* Irish, 31 Maine, 263.) When the ward is entitled to his estate he may take the initiative, (and such seems to have been the case in this instance,) and it is the guardian who is then to be cited to file his account. And surely it cannot be said, when this is the case, that the judgment will be void because notice is not given to the ward and all "others inter-

ested in the estate." But if, indeed, it could be said that the order of the Probate Court discharging the guardian and his sureties was void, it may be well questioned whether suit can be maintained on the bond until the guardian has been called upon to make a settlement of his accounts in that tribunal, or some good ground is shown why this is not done.

We are of opinion also that the settlement between Allen and Mrs. Shultz must be held valid and binding on her, even if looked upon and regarded as a private settlement between them, made out of court. She was fully informed of the action of the guardian in collecting the Confederate money, and desired it invested in negroes. No fraud is shown to have been practiced by Allen. He seems to have profited in no way by his action in the matter. Nothing was concealed from her. No undue influence was used to induce her to make the settlement. She accepted the negroes six or seven months after coming of age, when the value and security of such property was far different from what they were at the time Allen purchased them. If the collection from Chatham in Confederate money was void, she held the note, and could have collected the entire amount of it from him; but she only claimed the balance due, after allowing credit for the amount paid Allen. And it is not until after a silence of near eight years that she is heard to complain that her guardian had not fully settled with and accounted to her for her estate. Under these circumstances a court of equity would have refused to set aside the settlement, or prevent the guardian's account to be surcharged. (Sherry *v.* Sansbury, 3 Port. Ind., 320; Singston *v.* Love, 1 Head., 357; Caplinger *v.* Stokes, Meigs, 175; Southall *v.* Clark, 3 Stew. & Port., 338; Boynton *v.* Dyer, 18 Pick., 1; Ketlige *v.* Belton, 14 N. H., 401.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.